1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDWIN MCMILLAN,                          No.  2:13-cv-00578-MCE-KJN P

12            Plaintiff,

13      v.                                    FINDINGS & RECOMMENDATIONS

14   S. RINGLER, et al.,

15            Defendants.

16

17          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  Presently before the court is defendants' motion to dismiss.  (ECF No. 29.)

19   For the following reason, the undersigned recommends that defendants' motion be denied, except

20   as to (i) the sixth claim against defendant Muldong, (ii) the eighth claim against defendant

21   Warden Swarthout in his official capacity, and (iii) the ninth claim, under California Civil Code

22   § 52.1, against defendants Henry, Scotland, Ruiz, Muldong, Popovits, Arnold, Young, and

23   Swarthout.

24   I.  Background

25         A.  Procedural Background

26          On March 25, 2013, plaintiff filed his initial complaint.  (ECF No. 1.)  On January 10,

27   2014, plaintiff filed the operative first amended complaint ("FAC," ECF No. 18), naming as

28   defendants S. Ringler, D. Henry, A. Scotland, M. Ruiz, Zuniga, R. Muldong, J. Popovits,

E. Arnold, K. Young, and Warden Swarthout.  The first nine defendants are sued in their individual capacities; the latter is sued in both his individual and official capacity.  (Id. at 2.)  On March 12, 2014, the court screened the FAC and deemed service appropriate on all ten named defendants.  (ECF No. 17.)

On July 1, 2014, defendants filed a request to seal documents.  (ECF No. 28.)  On September 9, 2014, after considering plaintiff's opposition to this request (ECF No. 32), the court granted the request to seal, on the grounds that "disclosure of the documents to plaintiff could jeopardize the safety and security of the institution."  (ECF No. 39 at 1.)  The court further directed as follows:

> Plaintiff shall not have access to the subject documents.  Should the court later find, when considering the merits of defendants' motion to dismiss, that plaintiff should be accorded the opportunity to respond to the substance of the confidential documents, it will appoint counsel for such limited purpose pursuant to an Attorneys' Eyes Only Protective Order, and direct counsel to file a response on plaintiff's behalf.

(Id.)  On July 1, 2014, defendants filed a motion to dismiss the FAC in its entirety.  (ECF No. 29.)  On August 15, 2014, plaintiff filed an opposition thereto (ECF No. 33), and on August 21, 2014, defendants filed their reply (ECF No. 34)  By order dated September 9, 2014, the court ordered plaintiff's sur-reply (ECF No. 38) stricken from the record.  (ECF No. 39.)

The court now turns to the merits of defendants' motion to dismiss.

B.  Factual Background

The following facts are alleged in plaintiff's first amended complaint and documents cited therein.

1.  Prior Case

Plaintiff avers that he is a sincere adherent of the Islamic faith.  (FAC ¶ 60, ECF No. 18.)  He previously filed a lawsuit in the Central District of California, McMillan v. Terhune, No. CV 10-2088-AG (SP) (hereinafter, the "Prior Case").  The gravamen of the Prior Case was that, during a period in which plaintiff was confined to his bunk as a disciplinary measure, he was denied meals that he needed to fast during Ramadan.  See id., 2011 WL 2669157 at *1 (C.D. Cal. Mar. 30, 2011).  The court takes judicial notice of the proceedings therein pursuant to Federal

1    Rule of Evidence 201.

2         In October 2012 – when plaintiff was incarcerated at California State Prison-Solano in

3    Vacaville, California ("CSP-Solano") – he was summoned to participate in a telephonic

4    mediation in the Prior Case with former U.S. Magistrate Judge Victor E. Bianchini.  (FAC ¶ 1,

5    ECF No. 18.)  Plaintiff took the phone call in the office of defendant Scotland, a lieutenant posted

6    in the institution's D-Facility.  (Id. ¶ 2.)

7         Plaintiff alleges that during the phone call, defendant Scotland displayed visible anger

8    towards him and repeatedly asked him why the phone call had been routed to his (Scotland's)

9    office.  (Id. ¶ 3.)  Shortly thereafter, defendant Scotland was joined by defendant Ringler.  (Id.

10   ¶ 4.)  Scotland informed Ringler of the call's purpose.  (Id.)  Scotland and Ringler remained in the

11   doorway observing plaintiff and listening to his conversation; plaintiff alleges that he felt

12   extremely uncomfortable with their "looming presence," and that he informed Judge Bianchini of

13   these facts.  (Id. ¶ 5.)  Plaintiff also notes that, as a result of these events, Scotland and Ringler

14   became aware that plaintiff was engaged in civil litigation against the California Department of

15   Corrections and Rehabilitation and/or its employees.  (Id. ¶ 8.)

16        According to plaintiff, approximately 1.5 hours into the telephone call, defendant Scotland

17   interrupted plaintiff, and ordered him to "go sit on the bench in the hallway."  (Id. ¶ 6.)  Plaintiff

18   did as he was instructed.  He overheard Scotland speaking to Judge Bianchini, and saying, "I do

19   not want [plaintiff] on my phone."  (Id. ¶ 6.)  Plaintiff was then provided access to a phone in

20   another part of the facility in order to conclude the call.  (Id. ¶ 7.)

21        Plaintiff alleges that defendants Ringler and Ruiz thereafter "continuously" conducted

22   searches of plaintiff's person and property under either the direct or indirect supervision of

23   defendant Scotland.  (Id. ¶ 9.)

24           2.  December 5, 2012 search

25        On December 5, 2012, defendants Ringler and Zuniga conducted a contraband search of

26   plaintiff's assigned housing area.  (Id. ¶ 10.)  At the time, plaintiff was housed in an open dorm

27   style setting.  (Id. ¶ 40.)  Plaintiff describes this search as follows:

28   ////

> During this contraband search plaintiff's bed linens, personal effects and photographs of family members were strewn about the floor, his legal materials unbound and separated from their bindings, and two of plaintiff's Holy Korans were destroyed and or desecrated.  One Koran was torn lengthwise or crosswise while the other was discovered face down in some unknown liquid.  (Id. ¶ 11.)

According to plaintiff, at the conclusion of the search, Ringler confiscated plaintiff's personal appliances, and sarcastically asked him, "How did your case turn out?"  (Id. ¶ 12.)

Immediately thereafter, plaintiff asked two correctional officers assigned to his housing unit, Rothman and Williamson, to summon the facility sergeant to "take note of and or otherwise document the status of plaintiff's property after completion of the search."  (Id. ¶ 13.) Williamson made a telephone call, and then informed plaintiff that the facility sergeant on duty, Sergeant Militano, had instructed him to tell plaintiff to "put it in a 602."  (Id. ¶ 14.)  (Rothman, Williamson, and Militano are not named as defendants herein.)

On December 5, 2012, plaintiff submitted an inmate grievance on form CDCR 602 ("602").  (ECF No. 29-1 at 33; ECF No. 33 at 21.)  Examination of the form 602 shows that plaintiff states therein that he was "involved as a witness against state correctional officers in an action within the U.S. District Court" (id.), and alleges retaliatory conduct by defendant Ringler in response (ECF No. 33 at 23).  (See also FAC ¶ 22, ECF No. 18.)  Plaintiff's 602 grievance complaint was accepted for formal review and issued Log # CSP-S-12-03044.  (Id. ¶ 23.) Defendant Henry, a Correctional Lieutenant, was appointed to investigate the allegations in plaintiff's 602 grievance.  (Id. ¶ 25.)

According to plaintiff, a Catholic chaplain at CSP-Solano documented the circumstances of the December 5, 2012 search in a CDC Memorandum, dated December 6, 2012, and personally delivered this memorandum to defendant Young, an Associate Warden at the prison.  (Id. ¶ 15.)

Plaintiff alleges that defendant Young, upon reviewing the memorandum, summoned one Investigative Lieutenant Brown to photograph "them" for evidentiary purposes.  (Id. ¶ 16.)  It is unclear what plaintiff intends the term "them" to refer to.   Plaintiff alleges that the memorandum was mailed to Rachel Roberts, an attorney with the Council on American-Islamic Relations, and that Ms. Roberts then sent a letter, dated on or about January 12, 2013, to the warden of CSP-

4

1    Solano regarding defendant Ringler's handling of plaintiff's Korans during the December 5, 2012

2    search.  (Id. ¶¶ 17, 19.)  The letter also requested that Ms. Roberts be informed of the results of

3    any investigation into the matter.  (Id. ¶ 19.)

4         On December 14, 2012, defendant Ringler allegedly spontaneously stated to plaintiff, "I

5    know all about you, I'm not finished with you yet." This statement was made in the presence of

6    Lieutenant Bickham.  At that time plaintiff directly appealed to Bickham to intercede on his

7    behalf concerning Ringler's statements and actions.  (Id. ¶ 18.)

8         According to plaintiff, as a result of the desecration of his Koran and threats of further

9    retaliation, he experienced what he believed to be stress due to symptoms such as depression, lack

10   of energy, appetite and loss of weight; he sought and received medical attention for these

11   symptoms.  (Id. ¶ 26-28.)

12        Plaintiff contends that, as a result of his Form 602 complaint regarding the December 5

13   incident, defendants Ringer and Zuniga were disciplined.  (Id. ¶ 30.)

14              3. January 8, 2013 incident involving Flier

15        Plaintiff was the subject of a CDCR Rules Violation Report, Log No. SD-13-01-0013, for

16   an incident occurring on January 8, 2013.  (Id. ¶ 44; ECF No. 29-1 at 42-55.)  The Report was

17   issued by defendant Muldong.  According to the Report, a document was discovered in a printer

18   cage which read as follows:

19        ATTENTION!

20        ***YOUR ASSISTANCE IS REQUESTED***

21        The recent series of alleged acts of harassment of inmates,
22        retaliation for utilizing the appeals process, destruction of property,
         and the defacing of sacred religious artifacts by C/O Ringler have
23        been properly brought to the attention of the appropriate CSP
         Solano Staff charged with investigating staff misconduct. These
24        complaints together have resulted in the initiation of investigation
         of these incidents by the CDC "Hiring Authority" to determine the
25        necessity of imposing possible sanctions against this officer. Due to
         the seriousness of these acts, CSP Solano's indifference and C/O
26        Ringlers' [sic] subsequent lack of insight to the causative factors of
         his offenses, several organizations and law firms have decided to
27        submit a complaint to the Solano County Grand Jury with the
         expectation that the evidence produced will return a criminal
28        indictment against said officer and or officers or staff in league with
         him in perpetrating these acts.

                                          5

It is with this in mind that we as [*sic*] for your assistance in obtaining justice for those who have fallen victim to this officers unjust acts, or will fall victim in the very near future if this behavior is ignored. Please contact us if you have you [*sic*] directly observed C/O S. Ringler commit any of the following:

• Destroy personal property intentionally or in an attempt to open your approved appliances;

• Open and or attempt to open inmate appliances with screwdrivers pliers and or knives while in the housing units; ·

• Confiscate personal property without providing property receipts or "disposition" of said items;

• Falsify or attempt to submit fraudulent documents against you in any proceeding and or hearing;

• Destroy and or deface religious artifacts (to an [*sic*] including Bibles, Korans, religious medallions, art etc.);

• Using any confiscated property and or delivering to any person, another inmate's personal property;

If you have directly observed any of the stated actions being committed by C/O S. Ringler we are requesting that you describe such conduct in as much detail as possible (Date, Time, Place of the incident, Witnesses, any administrative action initiated and results of any investigation, etc.) in an envelope labeled "Confidential Legal Mail" addressed to:

CAIR California
c/o Ms. Rachel Roberts, Esq.
3000 Scott Bovd, Suite 101
Santa Clara, California 95054

S.D. Legal Services
c/o Ms. G. Interiano
Oxnard, California 93033

NOTE: The names of any witnesses and or their testimony which will.be submitted to the Grand Jury will not be disclosed to CSP Solano staff or any other person. Your right of confidentiality will be protected so that you may continue your programming without fear of retaliation for exercising your right to petition the government.

("Flier," ECF No. 29-1 at 53-54.)

The Rules Violation Report identifies plaintiff as the author of the Flier, and states that in producing the flier, he violated Title 15, California Code of Regulations § 3041(a), "Misuse of State Computer During Work on Assignment." (<u>Id.</u> at 46.) The Rules Violation Report describes

plaintiff as saying, "I did not make or print out any of those forms from my work area.  I did initially start on the document at my work site about C/O Ringler, however, I decided to erase it off the computer.  I don't know who made the document or how it got out.  Someone else must have done that!"  (Id.)  The report deems this a "partial admission of guilt."  (Id.)  In his first amended complaint, plaintiff details numerous alleged flaws in the evidence presented against him.  (FAC ¶¶ 46-50, ECF No. 18.)

### 4.  January 15, 2013 incident involving Bulletins

Defendant Ringler then filed a form CDC 128-B Chrono, dated January 17, 2013,[1] alleging that one day earlier, at approximately 7:45 a.m., he was informed by defendant Scotland that bulletins "authored by plaintiff have been posted in the inmate housing units on Facility D." (hereinafter "Bulletins)  (Id. ¶ 31; ECF No. 29-1 at 38.)  The description of the Bulletins in the Chrono makes it clear that their content is likely the same as the Flier above.  The 128-B Chrono concludes with the following statements: "I feel McMillan's release to the General Population will present a threat to my safety and to the safety and security of the institution.  I am requesting his transfer to another institution."  (Id.)

Plaintiff alleges that, as a result of Ringler's submission of the Chrono, his quarters were searched at approximately 0730 hours on January 16, 2013, by building housing unit officer Williamson (FAC ¶ 32, ECF No. 18.)  Williamson did not recover or report the discovery of any contraband as a result of this search.  (Id. ¶ 33.)

Approximately 30 minutes later, defendant Ruiz searched plaintiff's quarters.  (Id. ¶ 34.)  Ruiz confiscated certain documents belonging to plaintiff and an electrical charger.  (Id. ¶ 35.)  Ruiz then issued plaintiff a CDCR Rules Violation Report for possession of dangerous contraband, Log No. SD-13-01-0012. (Id. ¶ 33; ECF No. 29-1 57-63.)  Ruiz handcuffed plaintiff and escorted him to the D-Facility program office, where he was placed in a holding cage.  (Id. ¶ 34.)

////

---

[1] Plaintiff elsewhere alleges that, despite the date on the Chrono, it was submitted on January 16, 2013.

Plaintiff contends that, but for Ringler's submission of the Chrono, his property would not have been searched successively, and he would not have been issued the resulting Rules Violation Report.  (Id. ¶ 66.)

### 5. Placement in administrative segregation

According to plaintiff, he was subsequently presented with a CDCR Form 114 "Lock-up Order," authored by defendant Henry, which quoted defendant Ringler's assertions that plaintiff should be deemed an institutional security concern for his involvement in class action litigation against Ringler.  (Id. ¶ 38.)  Plaintiff's custody status was immediately increased to maximum, and he was rehoused within CSP-Solano's Administrative Segregation Unit.  (Id. ¶ 39.)  Plaintiff alleges that his change in status and rehousing was due to Ringer's submission of the 128-B Chrono.

Plaintiff was then confined to a cell or cage twenty-four hours a day, and received an armed escort whenever he was removed from his cell.  Plaintiff was deprived of contact visits with family, phone calls, and access to personal property, such as school textbooks, legal briefs and cosmetics.  Plaintiff also alleges that he was denied sufficient medical care and prescribed orthotics.  (Id. ¶ 41.)

While in Administrative Segregation, plaintiff suffered stress due to depression, loss of appetite, anxiety, loss of sleep, and loss of weight, for which he sought and received medical assistance.  (Id. ¶¶ 53-55.)

On January 24, 2013, a classification review was performed by defendants Arnold, Popovits, and Young.  Based on the January 8, 2013 Rules Violation Report, Log # SD-13-01-0013, plaintiff was retained in Administrative Segregation.  (ECF No. 51.)  Plaintiff alleges that on March 27, 2013, at another classification review, these same defendants "personally and orally requested plaintiff's retention in administrative segregation and adverse transfer from [CSP-Solano]."  (Id. ¶ 52.)  On March 27, 2013, it was decided that plaintiff would be transferred from CSP-Solano.  (Id. ¶ 56.)  On or about May 25, 2013, plaintiff was transferred to Folsom State Prison.  (Id. ¶ 58.)  As a result of the transfer, his work privilege classification status was reduced, and he is administratively restricted from access to computers, vocational training programs, and

8

1    Prison Industry Authority program.  (<u>Id.</u> ¶ 59.)

2    II.  <u>Standards</u>

3         A.  <u>Standard re: Motion to Dismiss</u>

4         Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

5    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

6    considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the

7    allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), and construe the

8    pleading in the light most favorable to the plaintiff.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421

9    (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive

10   dismissal for failure to state a claim, a pro se complaint must contain more than "naked

11   assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

12   action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other words,

13   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14   statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Furthermore, a claim

15   upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at 570.

16   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

17   draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556

18   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

19   of a motion to dismiss for failure to state a claim.  <u>Hal Roach Studios v. Richard Reiner & Co.</u>,

20   896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

21        In general, pro se pleadings are held to a less stringent standard than those drafted by

22   lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

23   such pleadings liberally.  <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

24   However, the court's liberal interpretation of a pro se complaint may not supply essential

25   elements of the claim that were not pled.  <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d

26   266, 268 (9th Cir. 1982).[2]

27   _____

28   [2] The court notes that, in his opposition, plaintiff sets forth an incorrect standard for analyzing a
     motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Supreme Court's opinions

B. <u>Standard re: First Amendment retaliation claim</u>

Plaintiff alleges that all of the named defendants retaliated against him for exercise of his First Amendment rights.

To succeed on a First Amendment retaliation claim, a plaintiff must show the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. <u>Pinard v. Clatskanie School Dist.</u>, 467 F.3d 755, 770 (9th Cir. 2006); <u>White v. Lee</u>, 227 F.3d 1214, 1228 (9th Cir. 2000). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in those activities.

At the pleading stage, the "chilling" requirement is met if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." <u>Id.</u> at 568, quoting <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999). However, direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. <u>Rhodes</u>, 408 F.3d at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009), citing <u>Rhodes</u>, 408 F.3d at 568 n.11.

Although the timing of an official's action can be circumstantial evidence of retaliation, there must generally be something more than simply timing to support an inference of retaliatory intent. <u>See</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 808 (9th Cir. 1995).

"Bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

---

in <u>Twombly</u>, 550 U.S. at 544, and <u>Iqbal</u>, 556 U.S. at 662, have retired the long-established "no-set-of-facts" standard established in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).

1   III.  Analysis

2       A.  Claim One

3       In his first claim, plaintiff alleges that he was subjected to cell searches in retaliation for

4   his litigation of the Prior Case, activity that is protected under the First Amendment.[3]

5       It is well-settled that prisoners have no Constitutional right of privacy in their cells.  See,

6   e.g., Hudson v. Palmer, 468 U.S. 517, 525-28 (1984) ("A right of privacy in traditional Fourth

7   Amendment terms is fundamentally incompatible with the close and continual surveillance of

8   inmates and their cells required to ensure institutional security and internal order."); Cal. Code

9   Regs. Tit. 15, § 3287(a)(2) ("Cell and property inspections are necessary in order to detect and

10  control serious contraband and to maintain institution security.").

11      Much of defendants' motion to dismiss this claim rests on the following chain of

12  reasoning: because (1) the searches that plaintiff challenges as retaliatory turned up contraband

13  and (2) prison correctional officers are explicitly authorized to conduct unscheduled cell searches

14  in order to detect contraband, then (3) defendants herein cannot be held liable under § 1983 for

15  conducting the challenged searches.  (Motion to Dismiss, ECF No. 29-1 at 11-14; Reply, ECF

16  No. 34 at 2-3.)  This reasoning appears erroneous in two respects.

17      The first error lies in the assumption that, in assessing claims of retaliation, courts should

18  look at the results of the challenged actions.  The focus of the legal inquiry is, instead, on the

19  motives for those actions.  It is for this reason that causation is the second element of a First

20  Amendment retaliation claim.  Rhodes, 408 F.3d at 567-68.  Consequently, the fact that a

21  challenged search turns up contraband does not, after the fact, justify that search if the search was

22  undertaken for a retaliatory purpose.

23      The second error lies in the assumption that, because an action is otherwise lawful, it

24  cannot be undertaken for improper retaliatory motives.  This assumption is belied by prior cases

25  _____

26  [3] Plaintiff's first claim names Ringler and Zuniga.  (See ECF No. 18 at 12-13.)  However, this
    claim appears directed at Scotland as well, as paragraph 9 states, "[D]efendants Ringler and

27  M. Ruiz [Ruiz is named in plaintiff's second claim] would continuously conduct searches of
    plaintiff's person and or property under the direct or indirect supervision of defendant

28  A. Scotland."

finding that prison searches can be retaliatory.

In Xiong v. Kirkland, No. 2:09-cv-3345-MCE-GGH, 2012 WL 260006 (E.D. Cal. Jan. 25, 2012) (adopted in full Mar. 1, 2012), the court denied summary judgment to a defendant correctional officer who repeatedly searched plaintiff's cell, finding that plaintiff's statement that "[e]very time I'd turn in a 602, my cell would get searched within that week or within three days" was sufficient to create a triable issue of material fact as to whether there was a retaliatory motivation for the challenged searches.  Id. at *15-16.  In Rupe v. Cate, 688 F. Supp. 2d 1035 (E.D. Cal. 2010), the court found that plaintiff's allegations that he was strip-searched in response to his attempts to practice his religion were sufficient to state a claim for First Amendment retaliation, writing, "Suppression of religious exercise is not a legitimate penological goal."  Id. at 1049.

Not all courts are on agreement on this point.  See, e.g., Jones v. Harris, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009) ("[P]laintiff has failed to allege any facts lending to show that the searches (regardless of who conducted or ordered them or how disruptive they were) were so much a departure from the norm as . . . to qualify as conduct that would deter an individual of ordinary firmness from exercising his constitutional rights.").

At this stage of the pleadings, the undersigned finds those cases holding that prison searches can be retaliatory to be more persuasive.  Given that "it is to be expected that cell searches will disrupt, not only the prisoner's life, but also the living conditions inside the cell," id., to find (as defendants urge) that such searches can under no set of circumstances be undertaken for a retaliatory motive would be to give correctional staff intent on retaliation a way to do so without facing any consequences.  California law itself recognizes the possibility that correctional staff might misuse the inspection power.  Title 15 California Code of Regulations § 3287, entitled "Cell, Property, and Body Inspections," provides in pertinent part:

> Cell and property inspections are necessary in order to detect and control serious contraband and to maintain institution security. **Such inspections will not be used as a punitive measure nor to harass an inmate.**  Every reasonable precaution will be taken to avoid damage to personal property and to leave the inmate's quarters and property in good order upon completion of the inspection.

1    Cal Code Regs. Tit. 15, § 3287(a)(2) (2014) (emphasis added).

2            Based on the foregoing, the undersigned recommends denial of defendants' motion to

3    dismiss plaintiff's first claim.

4            B.   Claim Two

5            In his second claim, plaintiff alleges that defendants Ringler and Zuniga destroyed and/or

6    desecrated his Holy Korans when they searched his cell on December 5, 2012, in retaliation for

7    his litigation of the Prior Case.

8            Defendants move to dismiss this claim on the grounds that California state law provides

9    an adequate post-deprivation remedy for the loss of property.  See Barnett v. Centoni, 31 F.3d

10   813, 816 (9th Cir. 1994) (per curiam) ("[A] negligent or intentional deprivation of a prisoner's

11   property fails to state a claim under section 1983 if the state has an adequate post deprivation

12   remedy.").  According to defendants, California Government Code § 844.6 makes public

13   employees liable for injuries to prisoners which are proximately caused by those employees'

14   negligent or wrongful acts or omissions, and California Government Code §§ 900-15 set out

15   procedures for making claims against public entities.  (See Motion to Dismiss, ECF No. 29-1 at

16   14.)  In light of these procedures, defendants contend, plaintiff cannot seek redress under Section

17   1983.

18           Defendants' argument is inapt.  What Barnett and its progeny make clear is that prisoners

19   cannot raise due process claims under Section 1983 for deprivation of property.  See, e.g.,

20   Wilson v. Nesbeth, 341 Fed. Appx. 291 (9th Cir. 2009) ("The district court properly dismissed

21   Wilson's claim that he was deprived of property without due process because Wilson had an

22   adequate post deprivation remedy under California law")  Lopez v. Dion, 422 Fed. Appx. 590,

23   591 (9th Cir. 2011) ("[B]ecause Lopez had an adequate state law tort remedy for the taking of his

24   electronic property, he did not allege a cognizable due process claim and his complaint was

25   properly dismissed.")  This is eminently logical: inmates cannot claim to have been deprived of

26   due process when California state law provides procedural mechanisms for challenging property

27   deprivations.

28   ////

                                                   13

1    Plaintiff's claim is quite different.  He is not challenging the destruction of his Korans on

2    due process grounds; rather, he is challenging their destruction in alleged retaliation for

3    participating in the Prior Case, litigation which concerned his rights as a Muslim.  The Ninth

4    Circuit "has reaffirmed that prisoners may still base retaliation claims on harms that would not

5    raise due process concerns."  Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).  Accordingly, it

6    appears that Barnett, 31 F.3d at 816, does not bar claims that property was destroyed in retaliation

7    for activity protected under the First Amendment.

8    Accordingly, it is recommended that the motion to dismiss plaintiff's second claim against

9    defendants Ringler and Zuniga be denied.

10    C.  Claim Three

11    In his third claim, plaintiff alleges that defendant Ringler submitted the 128-B Chrono

12    dated January 17, 2013, in retaliation for plaintiff's exercise of his First Amendment rights.

13    According to defendants, the Bulletins allegedly authored by plaintiff gave Ringler

14    legitimate concern as to his own safety, as well as the safety and security of the institution, and

15    the proper way to document this information was on a 128-B Chrono.  In support, defendants cite

16    Title 15, California Code of Regulations § 3000, which provides in pertinent part:

> General Chrono means a CDC Form 128-B (Rev. 4-74) which is
> used to document information about inmates and inmate behavior.
> Such information may include, but is not limited to, documentation
> of enemies, records of disciplinary or classification matters, pay
> reductions or inability to satisfactorily perform a job, refusal to
> comply with grooming standards, removal from a program, records
> of parole or social service matters.

21    (See Motion to Dismiss, ECF No. 29-1 at 14-15.)

22    Plaintiff counters that he had a right, under applicable regulations, to file a grievance on

23    behalf of a group of inmates.  See 15 Cal. Code Regs. § 3084.2(h) (addressing procedures for a

24    "Group appeal.").  According to plaintiff, "Since plaintiff's exercise of his First Amendment

25    [r]ight to seek redress of grievances was the ultimate subject of the 128B Chrono, plaintiff

26    submits it should be construed as an adverse action supporting his claim of retaliation."

27    (Opposition, ECF No. 33 at 8.)  Plaintiff further argues that it has not been established that he was

28    the author of the Bulletins, and that defendant Ringler "erroneously and unjustifiably concluded

14

1  that plaintiff was the 'author.'" (Id. at 7.)  Plaintiff is essentially arguing that Ringler retaliated

2  against him for perceived participation in protected activity under the First Amendment.

3  This issue seems better-suited for resolution at summary judgment or trial than on a

4  motion to dismiss.  It is unclear whether authoring and posting the Bulletins constitutes protected

5  activity under the First Amendment.  At this stage of the pleadings, defendants have failed to

6  establish that it was not so protected.

7  Moreover, significant factual questions are presented regarding who posted the Bulletins,

8  where and when they were posted, what communications defendant Ringler received in

9  connection with their posting, and whether he had, as defendants assert, a "legitimate safety

10  concern" arising out of their contents.  The allegations in the first amended complaint and the

11  documents cited therein do not provide a basis for conclusively determining that plaintiff posted

12  the Bulletins; accordingly, defendants cannot establish that plaintiff was legitimately disciplined

13  for posting them.

14  Finally, the Chrono recommends plaintiff's transfer to another institution.  Transfer can

15  constitute adverse action for purposes of a First Amendment retaliation claim.  Rizzo v. Dawson,

16  778 F.2d 527 (9th Cir. 1985).  While the mere fact that defendant Ringler recommended

17  plaintiff's transfer does not make him liable for retaliation, the recommendation does, at the

18  pleadings stage, bolster plaintiff's claim that Ringler had a retaliatory motive in writing the

19  Chrono.

20  Therefore, it is recommended that defendants' motion to dismiss plaintiff's third claim be

21  denied.

22  D.  Claim Four

23  In his fourth claim, plaintiff alleges that defendants Henry, Young, Popovits, and Arnold

24  placed him in administrative segregation in retaliation for posting the Bulletins.

25  Defendants argue that defendant Henry had a legitimate reason for writing the CDCR

26  Form 114 "Lock-up Order": "because, based on the [Bulletins], Plaintiff was deemed to be a

27  threat to the safety and security of the institution.  Specifically, Plaintiff's actions in posting the

28  [Bulletins] could have the effect of causing disorder among the inmates, which would threaten the

1   security of the prison." (Motion to Dismiss, ECF No. 29-1 at 15.) (Defendants also point out,

2   correctly, that the Form 114 does not quote defendant Ringler's 128-B Chrono, contrary to

3   plaintiff's allegation in paragraph 38 of the first amended complaint.) In support, defendants cite

4   Title 15, California Code of Regulations § 3335, which provides in pertinent part:

5       When an inmate's presence in an institution's general inmate
        population presents an immediate threat to the safety of the inmate
6       or others, endangers institution security or jeopardizes the integrity
        of an investigation of an alleged serious misconduct or criminal
7       activity, the inmate shall be immediately removed from general
        population and be placed in administrative segregation.
8

9   15 Cal. Code. Regs § 3335(a). (Motion to Dismiss, ECF No. 29-1 at 17.)

10      Again, as addressed above in the discussion of plaintiff's third claim, authoring and

11  posting the Bulletins may have constituted protected activity under the First Amendment.

12  Moreover, the allegations in the first amended complaint and the documents cited therein do not

13  provide a basis for concluding that plaintiff posted the Bulletins, meaning that the argument that

14  he was legitimately placed in administrative segregation is unavailing at this stage.

15      Accordingly, it appears that plaintiff has adequately pled that he was placed in

16  administrative segregation on the basis of First Amendment retaliation, and it is therefore

17  recommended that the motion to dismiss plaintiff's fourth claim be denied.

18      E.  Claim Five

19      In his fifth claim, plaintiff alleges that defendant Ruiz searched his cell on January 16,

20  2012, in retaliation for posting the Bulletins.

21      In moving to dismiss this claim, defendants again argue that cell searches are permitted

22  under California law, and that in this instance, defendant Ruiz's search of plaintiff's cell was

23  justified by his discovery of contraband.

24      As addressed above in the discussion of plaintiff's first claim, it is the court's view that

25  cell searches may not be undertaken solely for retaliatory purposes. In light of this discussion, it

26  is recommended that defendant's motion to dismiss plaintiff's fifth claim on this basis be denied.

27      Defendants also argue that this claim challenges Ruiz's issuance of a Rules Violation

28  Report, which resulted in a forfeiture of good-time credits, and therefore argue that the claim is

1  barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) (barring damages claims under

2  § 1983 for unconstitutional conviction or imprisonment), and <u>Edwards v. Balisok</u>, 520 U.S. 641,

3  643 (1997) (extending <u>Heck</u> to bar actions "challenging the validity of the procedures used to

4  deprive [an inmate] of good-time credits . . . ."). According to defendants, "a judgment in

5  Plaintiff's favor on [t]his retaliation claim . . . would necessarily imply the invalidity of the

6  decisions in [the] disciplinary matters and of the . . . 90-day credit forfeitures, thus impacting the

7  length of Plaintiff's sentence." (Motion to Dismiss, ECF No. 29-1 at 20.)

8       Plaintiff counters that, as he is serving a life sentence, any change in his good-time credits

9  is irrelevant to the length of his sentence, and therefore, the <u>Heck</u>/<u>Edwards</u> bar is inapplicable. In

10 support, he cites <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003) ("Where the . . . alleged

11 constitutional error does not increase prisoner's total period of confinement, a successful § 1983

12 action would not necessarily result in an earlier release from incarceration . . . . In such cases, the

13 favorable termination rule of <u>Heck</u> and <u>Edwards</u> does not apply.") He requests judicial notice of

14 a California Department of Corrections form, attached as Exhibit B to his Opposition, apparently

15 documenting a sentence of life plus five years.

16      Defendants counter that this form shows that plaintiff is eligible for parole, and that the

17 credit loss "could significantly impact Plaintiff's parole eligibility date, as would the reversal of

18 those losses." (Reply, ECF No. 34 at 9.)

19      The court deems the issue of whether plaintiff's fifth claim is barred by <u>Heck</u> and

20 <u>Edwards</u> to be one better addressed at summary judgment. Many of the propositions advanced by

21 the parties, such as the terms of plaintiff's sentence, the quantity of good-time credits at issue, and

22 the effect of those credits on plaintiff's parole eligibility, are factual matters that go beyond the

23 allegations pled in the first amended complaint and the documents referenced therein. It is the

24 latter which are the province of a Rule 12(b)(6) motion. It would be imprudent to rule on the

25 propriety of the claim without adequate briefing and proper presentation of evidence on the issue.

26      Accordingly, it is recommended that defendants' motion to dismiss plaintiff's fifth claim

27 be denied.

28 ////

F.   Claim Six

In his sixth claim, plaintiff alleges that defendant Muldong issued a Rules Violation Report (Log No. SD-13-01-0013) in retaliation for plaintiff's exercise of his First Amendment rights.

Defendant argue that plaintiff violated Title 15, California Code of Regulations § 3041(a), which addresses "Misuse of State Computer During Work on Assignment," by drafting the Flier. Under Title 15, California Code of Regulations § 3312, "When misconduct is believed to be a violation of law or is not minor in nature, it shall be reported on a CDC Form 115 (Rev. 7/88), Rules Violation Report." 15 Cal. Code Regs. § 3312(a)(3).

Defendants have the better of this argument.  Regardless of whether plaintiff did or did not print the Flier, Muldong had some basis for believing that plaintiff was responsible, based on plaintiff's admission that he "did initially start on the document at my work site about C/O Ringler, however, I decided to erase it off the computer." (ECF No. 29-1 at 46.)  As such, Muldong had a duty under § 3312(a)(3) to report "misconduct . . . believed to be a violation of law . . . ."

For this reason, plaintiff fails to state a claim for retaliation against defendant Muldong, and it is recommended that defendants' motion to dismiss the sixth claim be granted.

G.  Claim Seven

Plaintiff's seventh claim alleges that defendant Ringler confiscated his personal property when conducting cell searches in retaliation for plaintiff's litigation of the Prior Case.

Defendants move to dismiss the claim, on the basis that cell searches are permitted under California law, and that the challenged searches were justified by the discovery of contraband.

As addressed above in the discussion of plaintiff's first claim, it is the court's view that cell searches may not be undertaken solely for retaliatory purposes.  In light of this discussion, it is recommended that defendant's motion to dismiss plaintiff's seventh claim be denied.

H.  Claim Eight

Plaintiff's eighth claim is directed at defendant Warden Swarthout, for his failure and/or refusal to properly train and/or supervise the remaining nine defendants. Warden Swarthout is

18

1   sued in both his individual and official capacities.

2         Defendants argue, correctly, that the Eleventh Amendment bars any suit for damages

3   against Warden Swarthout in his official capacity.  (Motion to Dismiss, ECF No. 29-1 at 20-21.)

4   Plaintiff concedes this point.  (Opposition, ECF No. 33 at 14.)  Accordingly, any claims brought

5   against defendant Warden Swarthout in his official capacity should be dismissed.

6         Defendants then move to dismiss the claims brought against Warden Swarthout in his

7   individual capacity.  Defendants rely upon <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986), for

8   the proposition that, even if a supervisor does not adequately train or supervise his employees, he

9   cannot be held liable under § 1983 if those employees do inflict any constitutional deprivation.

10  Based on this proposition, defendants contend that, "as shown by the discussion above, each of

11  the [other named defendants] acted with legitimate reasons in taking any action that Plaintiff

12  complains of.  Since Plaintiff's retaliation claims against them fail, [plaintiff] therefore has no

13  basis for a failure-to-train claim against Warden Swarthout."  (Motion to Dismiss, ECF No. 29-1

14  at 18.)

15        As discussed above, it appears that the majority of plaintiff's claims against the other

16  named defendants will survive the instant motion to dismiss.  Accordingly, defendants cannot

17  successfully move to dismiss claims against defendant Warden Swarthout on the grounds that

18  plaintiff failed to state claims against defendants whom he supervised.

19      I. <u>Claim Nine</u>

20        Plaintiff's ninth claim, directed at all defendants herein, alleges that they violated the Bane

21  Act, California Civil Code § 52.1.

22        The Bane Act proscribes conduct by any person, "whether or not acting under color of

23  law," who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats,

24  intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of

25  rights secured by the Constitution or laws of the United States, or of the rights secured by the

26  Constitution or laws of this state. . . ."  Cal. Civ. Code § 52.1(a).  An action may be brought by

27  the government, <u>id.</u>, or by an individual, <u>id.</u> § 52.1(b), in a "civil action for damages, including,

28

but not limited to, damages under Section 52,[4] injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured," id.

"To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." O'Toole v. Superior Court, 140 Cal. App. 4th 488, 502 (2006), citing Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 841-43 (2004). Section 52.1 "require[s] an attempted or completed act of interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998) (quoted with approval in City and Cnty. of San Francisco v. Ballard, 136 Cal. App. 4th 381, 409 (2006)). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Shoyoye v. Cnty. of Los Angeles, 203 Cal. App. 4th 947, 956 (2012) (citations and internal quotation marks omitted). "Technically, whether a constitutional violation occurred and whether that violation was accompanied by any threats, intimidation or coercion are separate analytical inquiries (albeit with intertwining facts)." Barsamian v. City of Kingsburg, 597 F. Supp. 2d 1054, 1057 (E.D. Cal. 2009).

---

[4] Damages recoverable under Cal. Civil Code 52(b) are as follows:

. . . (b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice.

(3) Attorney's fees as may be determined by the court.

1    "It may be true that this section and other similar California statutes were enacted in

2    response to the alarming increase in hate crimes.  Nevertheless, there is no requirement that the

3    violence be extreme or motivated by hate in the plain language of the sections, or in the cases

4    construing them; there is also no requirement that the act constitute a crime.  If the California

5    legislature wanted to limit the reach of the statute to extreme, criminal acts of violence, it could

6    have explicitly said so."  Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1289

7    (9th Cir. 2001) (citations and internal punctuation marks omitted).

8        The elements of a claim under section 52.1 are:

9        (1) that the defendant interfered with or attempted to interfere with
10       the plaintiff's constitutional or statutory right by threatening or
         committing violent acts; (2) that the plaintiff reasonably believed
         that if she exercised her constitutional right, the defendant would
11       commit violence against her or her property [or] that the defendant
         injured the plaintiff or her property to prevent her from exercising
12       her right or retaliate[d] against the plaintiff for having exercised her
         right; (3) that the plaintiff was harmed; and (4) that the defendant's
13       conduct was a substantial factor in causing the plaintiff's harm.

14   McCue v. South Fork Union Elementary School, 766 F. Supp. 2d 1003, 1010 (E.D. Cal. 2011)

15   (citing Austin B. v. Escondido Union School Dist., 149 Cal.App.4th 860, 882 (2007), and CACI

16   No. 3025).

17       Defendants contend that plaintiff has failed to state a Bane Act claim because "[n]one of

18   the [alleged] acts are violent acts, none of them involve physical contact, and some of these acts

19   consist only of decision-making."  (Reply, ECF No. 34 at 8.)

20       Defendants' contention is largely correct, with the exception of defendants Ringler and

21   Zuniga.  Plaintiff alleges that after these defendants concluded their December 5, 2012 cell

22   search, "two of plaintiff's Holy Korans were destroyed and or desecrated.  One Koran was torn

23   lengthwise or crosswise while the other was discovered face down in some unknown liquid."

24   (FAC ¶ 11, ECF No. 18.)  At the conclusion of the search, plaintiff alleges that Ringler

25   sarcastically asked him, "How did your case turn out?"  (Id. ¶ 12.)  Nine days later, plaintiff

26   alleges that defendant Ringler "spontaneously stated to [him,] 'I know all about you, I'm not

27   finished with you yet.'"  (Id. ¶ 18.)  These allegations are sufficient to satisfy the first two

28   elements of a Bane Act claim.  The alleged desecration and/or destruction of plaintiff's Korans

21

1  was both an allegedly violent act and an injury to his property.  Ringler's question regarding the

2  Prior Case indicates an intent to interfere with or retaliate for plaintiff's exercise of his

3  Constitutional right of access to the courts.  Ringler's subsequent spontaneous statement to

4  plaintiff, coming shortly after the challenged cell search in which the Korans were damaged,

5  could be construed as a threat to commit such acts in the future.

6       Plaintiff has also alleged that he suffered harm (the third element of a Bane Act claim), in

7  that his Korans were damaged during the search.  Finally, he has alleged harm (the fourth and

8  final element) as a result of the December 5, 2012 search and Ringler's statements, pleading, "As

9  a proximate or direct result of the desecration of plaintiff's Holy Koran and threats of further

10  retaliation, plaintiff experienced what he believed to be stress due to symptoms such as

11  depression, lack of energy, appetite and loss of weight," for which he sought medical attention.

12  (Id. ¶¶ 26, 27.)

13       Based on the foregoing, it appears that the first amended complaint states a claim against

14  defendants Ringler and Zuniga under California Civil Code § 52.1.  Nevertheless, this claim

15  should be dismissed as against the remaining defendants.[5]

16       J.  Qualified Immunity

17       Finally, defendants contend that they are protected by qualified immunity.

18       Government officials enjoy qualified immunity from civil damages unless their conduct

19  violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910

20  (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is

21  presented with a qualified immunity defense, the central questions for the court are: (1) whether

22  the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

23  defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

24  was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Supreme Court has

---

[5] As Judge O'Neill has observed, "[N]o case has actually applied supervisor liability to a Bane Act claim and this federal court is loath to expand the reach of Bane Act liability."  Sanchez v. City of Fresno, 914 F. Supp. 2d 1079, 1118 n. 19 (E.D. Cal. 2012).  It therefore appears that defendant Scotland cannot be properly named as a defendant under the Bane Act despite plaintiff's allegations that Scotland supervised Ringler's cell searches.

1   held that "while the sequence set forth there is often appropriate, it should no longer be regarded

2   as mandatory."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

3        Defendants again argue that they did not violate plaintiff's constitutional rights, as the

4   challenged actions, including cell searches, the 128-B Chrono, and plaintiff's placement in

5   administrative segregation, were all permissible actions under California law.  Defendants fail to

6   acknowledge the "firm recognition that the prohibition against retaliatory punishment is 'clearly

7   established law' in the Ninth Circuit, for qualified immunity purposes."  Rhodes, 408 F.3d at 569

8   (internal quotations omitted).  The fact that the challenged actions may have been otherwise legal

9   does not mean that they could be undertaken with an impermissible retaliatory intent.

10       Finally, plaintiff's allegations – with the exception of defendant Muldong's authoring of a

11  Rules Violation Report – when taken in the light most favorable to plaintiff, are sufficient to

12  support his claims that defendants' conduct violated his right to be free from retaliation for

13  protected First Amendment activity.

14       Accordingly, defendants cannot obtain dismissal of plaintiff's claims on qualified

15  immunity grounds.

16  IV.  Conclusion

17       Based on the foregoing, IT IS HEREBY RECOMMENDED that defendants' motion to

18  dismiss (ECF No. 29) be granted as to:

19      1.  Plaintiff's sixth claim against defendant Muldong;

20      2.  Plaintiff's eighth claim against defendant Warden Swarthout in his official capacity;

21         and

22      3.  Plaintiff's ninth claim, under California Civil Code § 52.1, as to defendants Henry,

23         Scotland, Ruiz, Muldong, Popovits, Arnold, Young, and Swarthout,

24  but that in all other respects defendants' motion to dismiss be denied.

25       These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2  objections shall be served and filed within fourteen days after service of the objections.  The

3  parties are advised that failure to file objections within the specified time may waive the right to

4  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  Dated:  December 19, 2014

6

7  /mcmi0578.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24