UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWIN MCMILLAN,

                Plaintiff,

     v.

S. RINGLER, et al.,

                Defendants.

No.  2:  13-cv-0578 MCE KJN P

FINDINGS AND RECOMMENDATIONS

I.  Introduction

       Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No 49.)  For the reasons stated herein, the undersigned recommends that defendants' motion be granted in part and denied in part.

II.  Is Defendants' Motion Procedurally Proper?

       Plaintiff argues that defendants' motion to dismiss is improper because it raises arguments that were raised in their first motion to dismiss or that could have been raised in their first motion to dismiss.  For the following reasons, the undersigned rejects this argument.

       On March 12, 2014, the undersigned ordered service of plaintiff's first amended complaint.  (ECF No. 17.)  On July 1, 2014, defendants filed a motion to dismiss for failure to

1

1    state a colorable claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No.

2    29.)  On December 19, 2014, the undersigned issued a detailed findings and recommendations,

3    recommending that defendants' motion be granted in part and denied in part.  (ECF No. 41.)  In

4    particular, the undersigned recommended that defendants' motion be granted as to claim six

5    against defendant Muldong, claim eight against defendant Warden Swarthout in his official

6    capacity, and claim nine, under California Civil Code § 52.1, as to defendants Henry, Scotland,

7    Ruiz, Muldong, Popovits, Arnold, Young and Swarthout.  (Id.)  The undersigned recommended

8    that defendants' motion to dismiss be denied in all other respects.  (Id.)

9        On February 13, 2015, the Honorable Morrison C. England adopted the findings and

10   recommendations.  (ECF No. 44.)  However, Judge England granted plaintiff leave to file a

11   second amended complaint as to claims six and nine.  (Id.)  In response to Judge England's order,

12   plaintiff filed his second amended complaint on March 16, 2015.  (ECF No. 45.)   In response to

13   the second amended complaint, defendants filed the pending motion to dismiss.  (ECF No. 49.)

14       Plaintiff is correct that defendants' second motion to dismiss raises new arguments as well

15   as some arguments that were raised in the first motion to dismiss and rejected by the court.

16       "The law is clear in this Circuit that an 'amended complaint supersedes the original, the

17   latter being treated thereafter as nonexistent.'"  Gundy v. California Department of Corrections

18   and Rehabilitation, 2013 WL 522789 at *6 (E.D. Cal. 2013) (quoting Forsyth v. Humana, Inc.,

19   114 F.3d 1467, 1474 (9th Cir. 1997), overruled in part on other grounds, Lacey v. Maricopa

20   County, 693 F.3d 896, 928 (9th Cir. 2012).)  "Courts in this Circuit therefore have permitted

21   defendants moving to dismiss an amended complaint to make arguments previously made and to

22   raise new arguments that were previously available."  Gundy, 2013 WL 522789 at *6; see In re

23   Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV Television Litig., 758

24   F.Supp.2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed the [first amended complaint], it

25   superseded their previous complaint, and Sony was therefore free to move again for dismissal.");

26   Stamas v. Cnty. of Madera, 2010 WL 289310, at *4 (E.D. Cal. January 15, 2010) ("[A]n amended

27   pleading is a new round of pleadings ... [and] is subject to the same challenges as the original

28   (i.e., motion to dismiss, to strike, for more definite statement).");  Migliaccio v. Midland Nat'l

2

1    Life Ins. Co., 2007 WL 316873, at *2–3 (C.D. Cal. January 30, 2007) (rejecting plaintiffs'

2    argument that Federal Rule of Civil Procedure 12(g)(2)'s ban on successive Rule 12 motions

3    barred the defendants from raising new arguments or resurrecting arguments considered by the

4    court in their first motion to dismiss).  "The defense of failure to state a claim may be raised at

5    any time before trial."  Gundy, 2013 WL 522789 at * 6.

6         Accordingly, for the reasons set forth above, defendants' second motion to dismiss is

7    properly brought.

8    III.  Legal Standard for Motion to Dismiss

9         Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

10   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

11   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

12   must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

13   (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

14   McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

15   1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

16   than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

17   cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

18   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

19   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

20   upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

21   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

22   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

23   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

24   of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

25   896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

26        A motion to dismiss for failure to state a claim should not be granted unless it appears

27   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

28   entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

1    pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

2    404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

3    v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

4    interpretation of a pro se complaint may not supply essential elements of the claim that were not

5    pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

6    IV.  Plaintiff's Claims

7        The second amended complaint proceeds against defendants Arnold, Henry, Muldong,

8    Popovits, Ringler, Ruiz, Scotland, Swarthout, Young and Zuniga. (ECF No. 45.)  All relevant

9    events occurred at California State Prison-Sacramento ("CSP-Sac").

10       Plaintiff alleges that on or around October 2012, he was summoned to the Facility B

11   program office to receive a telephone call from a judge regarding a settlement conference.  (Id. at

12   4.)  The telephone call occurred in defendant Scotland's office.  (Id.)  During the telephone call,

13   defendant Scotland displayed anger toward plaintiff and repeatedly asked why the telephone call

14   was routed through his office.  (Id.)  Defendant Ringler arrived shortly later and defendant

15   Scotland told defendant Ringler the purpose of plaintiff's telephone call.  (Id.)  At this time,

16   plaintiff told the judge that defendants Ringler and Scotland were listening to the discussion.  (Id.)

17   Plaintiff told the judge that defendants' presence made him uncomfortable.  (Id.)

18       Approximately 1 ½ hours into the mediation, defendant Scotland told plaintiff to go sit on

19   the bench in the hallway.  (Id.)  Plaintiff heard defendant Scotland tell the judge that he did not

20   want plaintiff on his phone.  (Id.)  Plaintiff was then moved to a different location and given

21   access to another phone to finish the settlement conference.  (Id. at 4-5.)

22       As a result of hearing plaintiff on the telephone, plaintiff alleges that defendants Ringler

23   and Scotland became aware that plaintiff was engaged in civil litigation against the California

24   Department of Corrections and Rehabilitation ("CDCR") or its officers.  (Id. at 5.)  After October

25   2012, plaintiff alleges that defendants Ringler and Ruiz conducted repeated searches of plaintiff

26   and his property under the supervision of defendant Scotland.  (Id.)

27       Plaintiff alleges that on December 5, 2012, defendants Ringler and Zuniga conducted a

28   contraband search of plaintiff's housing area.  (Id.)  Prior to that time, contraband searches were

conducted by the correctional officers assigned to the respective housing units.  (Id.)  From

October 2012 until around January 17, 2013, defendants Ringler and Zuniga were assigned as

yard Security and Escort officers for Facility D.  (Id.)  Defendants Ringer and Zuniga also

supervised the D yard recreational yard and yard crew workers. (Id.)  In other words, they were

not assigned to plaintiff's housing unit.  Plaintiff alleges that on December 5, 2012, defendants

Ringler and Zuniga abandoned their Search and Escort positions in order to conduct the

contraband search in plaintiff's dorm living area.  (Id.)

Plaintiff alleges that prior to December 5, 2012, contraband searches were conducted once

per month.  (Id.)

Plaintiff alleges that during the December 5, 2012 search, plaintiff's bed linens, personal

effects and photographs of family members were thrown to the ground.  (Id.)  In addition,

plaintiff's legal materials were unbound and separated from their binding, and two of plaintiff's

Holy Korans were destroyed.  (Id.)  At the end of the search, defendant Ringler asked plaintiff in

a sarcastic voice, "How did your case turn out?"  (Id)  After asking this question, defendant

Ringler confiscated plaintiff's personal appliances.  (Id.)

At the end of the search, plaintiff told his housing unit officers Rothman and Williamson

to summon the facility sergeant to take note of and document the status of his property.[1]  (Id.)

After making a telephone call, Officer Rothman told plaintiff that the facility sergeant on duty,

Sergeant Militano, had instructed plaintiff to "put it in a 602."  (Id.)

Plaintiff alleges that the circumstances of the search of his property were memorialized by

the CSP-Solano Catholic Chaplain R. Boyle, in a memorandum dated December 6, 2012.  (Id.)

On that same day, the memorandum was personally delivered to defendant Young, Associate

Warden.  (Id.)  Defendant Young summoned Investigative Lieutenant Brown to photograph

"them" for evidentiary purposes. (Id.)

////

---

[1]   At some places in the second amended complaint, plaintiff refers to Officer Williamson as "defendant Williamson."  (See ECF No. 45 at 8:  21.)  However, Officer Williamson is not listed as a defendant in the caption of the complaint, nor is he consistently referred to as a defendant. Accordingly, the undersigned does not find that Officer Williamson is named as a defendant.

On December 14, 2012, defendant Ringler stated to plaintiff, "I know all about you.  I'm not finished with you yet."  (Id. at 6.)  Defendant Ringler made this statement in the presence of Lieutenant Bickham.  (Id.)  Plaintiff asked Lieutenant Bickham to intercede on his behalf concerning defendant Ringler's statements and actions.  (Id.)

Chaplain Boyle's memorandum was forwarded to Rachel Roberts at the Council on American-Islamic Relations.  (Id.)  After receiving the memorandum, Ms. Roberts sent a letter to the CSP-Warden addressing defendant Ringler's handling of plaintiff's Korans during the search.  (Id. at 7.)

Chaplain Boyle's memorandum was forwarded to Jean Weiss, CDCR Ombudsman.  (Id.)  Ms. Weiss informed plaintiff's family by telephone that an investigation of the December 5, 2012 search would be conducted.  (Id.)

Plaintiff filed a 602 grievance alleging that the December 5, 2012 search was retaliatory and in violation of prison regulations, grievance no. 12-3044.  (Id.)  Plaintiff submitted another 602 requesting the return of the personal property confiscated by defendant Ringler during the search. (Id.)

Defendant Henry was appointed to investigate the allegations in plaintiff's 602 grievances.  (Id.)  Defendant Henry's investigation consisted mainly of interviews of defendants Ringler and Zuniga, Officer Rathman, Officer Williamson and inmate witnesses Pratt and McClellan.  (Id. at 8.)

Defendants Ringler and Zuniga were disciplined as a result of plaintiff's grievance no. 12-3044.  (Id.)  Prior to or during the completion of the investigation of this grievance, on January 17, 2013, defendant Ringler submitted a chrono stating that plaintiff was attempting to file a class action against him.  (Id.)  Defendant Ringler stated that based on this class action, plaintiff should be deemed a threat to him and to the safety and security of the institution.  (Id.)

As a result of the chrono prepared by defendant Ringler, on January 17, 2013, Officer Williamson searched plaintiff's personal property and living space.  (Id.)  Officer Williamson did not discover any contraband as a result of this search.  (Id.)

////

6

1    Approximately 30 minutes after Officer Williamson conducted the search of plaintiff's
2  living quarters, defendant Ruiz conducted another search of plaintiff's living quarters.  As a result
3  of this search, documents belonging to plaintiff were confiscated and defendant Ruiz reportedly
4  discovered an electrical plug or charger.  (Id.)  Plaintiff alleges that in January 2013, CDCR
5  permitted inmates to buy and possess various types of chargers.  (Id. at 9.)

6    Plaintiff alleges that defendant Ruiz is a close personal friend with defendant Ringler.
7  (Id.)  Plaintiff alleges that defendant Ruiz conducted the search in retaliation for the grievance
8  plaintiff filed against defendant Ringler. (Id.)  Plaintiff alleges that defendant Ruiz did not
9  normally conduct contraband searches in plaintiff's housing unit. (Id.)

10    Plaintiff alleges that defendant Ruiz issued a rules violation report against plaintiff
11  charging him with possession of dangerous contraband.  (Id.)  Immediately after the search,
12  plaintiff was handcuffed by defendant Ruiz and taken to the D Facility program office and placed
13  in a holding cage.  (Id.)

14    Plaintiff was later given a CDCR Form 114 "lock up order," authored by defendant Henry
15  which referenced defendant Ringler's claim that plaintiff should be deemed an institutional
16  security concern for his involvement in a class action lawsuit naming defendant Ringler.  (Id.)
17  Plaintiff alleges that defendant Henry is a close personal friend of defendant Ringler.  (Id.)
18  Plaintiff alleges that defendant Henry agreed to assist defendant Ringler in his attempt to retaliate
19  against plaintiff for filing a grievance against him.  (Id.)  Plaintiff alleges that but for defendant
20  Ringler's plan to retaliate against him, he would not have received the lock-up order that resulted
21  in his placement in administrative segregation ('ad seg").  (Id. at 10.)

22    While in ad seg, plaintiff was served with another rules violation report dated January 8,
23  2013, alleging "misuse of state computer during work assignment," i.e., report no. 01-0013.  (Id.)
24  Plaintiff was alleged to be have authored and printed a document describing defendant Ringler's
25  actions. (Id.)  The rules violation report described the document as color printed on white card
26  stock paper.  (Id.)  The rules violation report also contained a statement by defendant Muldong
27  that no documents can or may be printed from plaintiff's work area due to padlocks on all inmate
28  accessible computers and or printers.  (Id.)  Defendant Muldong went on to state that the

7

1   document was printed prior to plaintiff's arrival at his work assignment on the date it was

2   discovered.  (Id.)

3          The rules violation report also contained a statement by defendant Scotland that the

4   document was printed in color on white card stock paper.  (Id. at 11.)  Defendant Scotland also

5   stated that the document could not have been printed by plaintiff because CSP-Solano inmates do

6   not have access to color printers or card stock paper.  (Id.)

7          In December 2012, defendant Muldong informed plaintiff that he would not discipline any

8   inmate for printing personal documents on the computers because they were made available for

9   that purpose.  (Id.)  Plaintiff alleges that prior to January 8, 2013, defendant Muldong allowed

10  other inmates to type, edit and print personal documents on the computers without risk of

11  discipline.  (Id.)

12         Plaintiff alleges that defendants Muldong, Scotland, Ringer and Young conspired to issue

13  the January 8, 2013 disciplinary report against plaintiff in retaliation for his exercise of his First

14  Amendment rights. (Id.)  Plaintiff alleges that the January 8, 2013 rules violation report served as

15  a basis for his retention in ad seg at the direction of defendants Arnold, Young and Popovits at the

16  January 24, 2013 classification hearing.  (Id. at 12.)  Defendants Arnold, Young and Popovits also

17  requested plaintiff's transfer away from CSP-Solano.  (Id.)  On May 25, 2013, plaintiff was

18  transferred to Folsom State Prison.  (Id. at 13.)

19         Plaintiff sent defendant Swarthout a "written communication" via the U.S. Mail,

20  informing him of the retaliation by defendants Ringler, Young, Ruiz and Scotland.  (Id.)

21  Defendant Swarthout disregarded plaintiff's plea for assistance in a memorandum dated April 29,

22  2013, in which he advised plaintiff to submit another 602 grievance.  (Id.)

23         Plaintiff alleges that all at times relevant, defendant Swarthout was aware of the policy of

24  retaliation enacted by defendants Ringler, Ruiz and Young via complaints submitted from civil

25  rights organizations.  (Id. at 14.)

26  ////

27  ////

28  ////

IV.  Plaintiff's Legal Claims

The undersigned herein describes the legal claims raised by plaintiff.

*Claim One*

Plaintiff alleges a retaliation claim against defendants Ringler, Zuniga and Scotland based on the December 5, 2012 search of his property.  (Id. at 15.)  Plaintiff alleges that defendants were retaliating against him based on their knowledge of his lawsuit against CDCR discussed during the telephonic settlement conference in defendant Scotland's office.  (Id.)

*Claim Two*

Plaintiff alleges that defendants Zuniga and Ringler destroyed his Korans during the December 5, 2012 search in retaliation for his lawsuit against CDCR discussed during the telephonic settlement conference in defendant Scotland's office.  (Id.)

*Claim Three*

Plaintiff alleges that defendant Ringler retaliated against him for his legal activities when Ringler prepared the January 17, 2013 chrono.  (Id. at 16.)

*Claim Four*

Plaintiff alleges that defendants Henry, Young, Popovits and Arnold retaliated against him for his legal activities when they held him in ad seg from January 16, 2013 to April 25, 2013. (Id.)  Plaintiff alleges that these defendants entered into an agreement with the other defendants to retaliate against plaintiff for his legal activities.  (Id.)

*Claim Five*

Plaintiff alleges that defendant Ruiz retaliated against him for his legal activities when he conducted the search of plaintiff's quarters on January 17, 2013.  (Id.)  As discussed above, this search resulted in plaintiff being charged with possession of contraband, i.e., a charger.  Plaintiff alleges that defendant Ruiz entered into an agreement with the other defendants to retaliate against plaintiff for his legal activities.  (Id.)

*Claim Six*

Plaintiff alleges that defendant Muldong retaliated against him for his legal activities by issuing the rules violation report charging plaintiff with misuse of the state computer.  (Id. at 17.)

1   Plaintiff alleges that defendant Muldong entered into an agreement with the other defendants to

2   retaliate against plaintiff for his legal activities.  (Id.)

3        *Claim Seven*

4        Plaintiff alleges that defendant Ringler retaliated against him for his legal activities when

5   Ringler confiscated plaintiff's personal property for no legitimate purpose. (Id.)

6        *Claim Eight*

7        Plaintiff alleges that defendant Swarthout's failure or refusal to properly supervise or train

8   the other named defendants "fostered or created a policy of overt retaliation."  (Id.)

9        *Claim Nine*

10       Plaintiff alleges that all defendants conspired to retaliate against him for his legal activities

11  and to violate his right to religious freedom pursuant to California Civil Code § 52.1.  (Id. at 18.)

12  V.   Analysis

13       Defendants move to dismiss claims 1 and 2 against defendant Zuniga, and claims 3, 4, 5,

14  6, 8 and 9.

15       A.  Claims 1 and 2 Against Defendant Zuniga, Claims 3, 4, 5, 6

16       *Legal Standard for Retaliation*

17       It is well-established that prison inmates have a constitutional right to freedom from

18  retaliation for engaging in activity protected by the First Amendment.  Rhodes v. Robinson, 408

19  F.3d 559 (9th Cir. 2005).  A prisoner retaliation claim has five elements.  First, plaintiff must

20  allege and show that he engaged in conduct protected by the First Amendment.  See Watison v.

21  Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  Second, a "plaintiff must claim that the defendant

22  took adverse action against the plaintiff."  Id. (citing Rhodes, 408 F.3d at 567).  "The adverse

23  action need not be an independent constitutional violation."  Id. (citing Pratt v. Rowland, 65 F.3d

24  802, 806 (9th Cir. 1995)).  Third, the plaintiff must allege and show a causal connection between

25  the protected conduct and the adverse action.  Id.  Fourth, the plaintiff must allege and prove

26  either a chilling effect on the exercise of First Amendment rights or some other harm.  Id.

27  Finally, plaintiff must allege and show that the retaliatory action "'did not advance legitimate

28  goals of the correctional institution....'"  Id. (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th

1    Cir. 1985)).

2         *Claims 1 and 2 Against Defendant Zuniga*

3         In claim 1, plaintiff alleges that defendant Zuniga participated in the December 5, 2012

4    search of plaintiff's housing area with defendant Ringler in retaliation for plaintiff's legal

5    activities.  In claim 2, plaintiff alleges that, during the December 5, 2012 search, defendants

6    Zuniga and Ringler destroyed plaintiff's Koran in retaliation for his legal activities.

7         Defendants move to dismiss the retaliation claims alleged against defendant Zuniga in

8    claims 1 and 2 on the grounds that plaintiff fails to allege that defendant Zuniga knew about any

9    of plaintiff's First Amendment activities.  Defendants argue that plaintiff has failed to plead facts

10   demonstrating that plaintiff's protected conduct, i.e., his legal activities, were a substantial

11   motivating factor behind defendant Zuniga's cell searches.

12        Defendants are correct that plaintiff has not directly alleged that defendant Zuniga had

13   knowledge of his legal activities.  However, plaintiff alleges that defendant Zuniga joined

14   defendant Ringler, against whom he has stated a potentially colorable retaliation claim, to conduct

15   the December 5, 2012 search.  Plaintiff alleges that defendants conducted the search, although

16   neither defendant was assigned to his housing area.  Plaintiff alleges that at the conclusion of the

17   search, defendant Ringler asked plaintiff, in a sarcastic voice, "How did your case turn out?"

18   Plaintiff alleges that both defendant Ringler and Zuniga were disciplined as a result of the

19   grievance he filed alleging that the December 5, 2012 search was retaliatory.

20        The timing and nature of the alleged retaliatory activities can provide circumstantial

21   evidence of retaliation.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 13116 (9th Cir.

22   1989); see Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of

23   retaliatory intent").  Plaintiff has pled sufficient facts against defendant Zuniga from which

24   retaliatory intent may be reasonably inferred.  Accordingly, defendants' motion to dismiss

25   plaintiff's retaliation claims against defendant Zuniga should be denied.

26        *Claim 3 Against Defendant Ringler*

27        In claim 3, plaintiff alleges that defendant Ringler submitted the 128-B Chrono dated

28   January 17, 2013, in retaliation for plaintiff's exercise of his First Amendment rights.  Defendants

1    moved to dismiss this claim in the first motion to dismiss.  In the December 19, 2104 findings and

2    recommendations, the undersigned recommended that defendants' motion to dismiss claim 3 be

3    denied for the reasons stated herein:

4
5          According to defendants, the Bulletins allegedly authored by
           plaintiff gave Ringler legitimate concern as to his own safety, as
           well as the safety and security of the institution, and the proper way
6          to document this information was on a 128-B Chrono.  In support,
           defendants cite Title 15, California Code of Regulations § 3000,
7          which provides in pertinent part:

8          General Chrono means a CDC Form 128-B (Rev. 4-74) which is
           used to document information about inmates and inmate behavior.
9          Such information may include, but is not limited to, documentation
           of enemies, records of disciplinary or classification matters, pay
10         reductions or inability to satisfactorily perform a job, refusal to
           comply with grooming standards, removal from a program, records
11         of parole or social service matters.

12         (See Motion to Dismiss, ECF No. 29-1 at 14-15.)

13         Plaintiff counters that he had a right, under applicable regulations,
           to file a grievance on behalf of a group of inmates.  See 15 Cal.
14         Code Regs. § 3084.2(h) (addressing procedures for a "Group
           appeal.").  According to plaintiff, "Since plaintiff's exercise of his
15         First Amendment [r]ight to seek redress of grievances was the
           ultimate subject of the 128B Chrono, plaintiff submits it should be
16         construed as an adverse action supporting his claim of retaliation."
           (Opposition, ECF No. 33 at 8.)  Plaintiff further argues that it has
17         not been established that he was the author of the Bulletins, and that
           defendant Ringler "erroneously and unjustifiably concluded that
18         plaintiff was the 'author.'"  (Id. at 7.)  Plaintiff is essentially
           arguing that Ringler retaliated against him for perceived
19         participation in protected activity under the First Amendment.

20         This issue seems better-suited for resolution at summary judgment
           or trial than on a motion to dismiss.  It is unclear whether authoring
21         and posting the Bulletins constitutes protected activity under the
           First Amendment.  At this stage of the pleadings, defendants have
22         failed to establish that it was not so protected.

23         Moreover, significant factual questions are presented regarding who
           posted the Bulletins, where and when they were posted, what
24         communications defendant Ringler received in connection with
           their posting, and whether he had, as defendants assert, a
25         "legitimate safety concern" arising out of their contents.   The
           allegations in the first amended complaint and the documents cited
26         therein do not provide a basis for conclusively determining that
           plaintiff posted the Bulletins; accordingly, defendants cannot
27         establish that plaintiff was legitimately disciplined for posting
           them.

28         Finally, the Chrono recommends plaintiff's transfer to another

                                          12

1
2
3
4

institution.  Transfer can constitute adverse action for purposes of a First Amendment retaliation claim.  Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1985).   While the mere fact that defendant Ringler recommended plaintiff's transfer does not make him liable for retaliation, the recommendation does, at the pleadings stage, bolster plaintiff's claim that Ringler had a retaliatory motive in writing the Chrono.

5
6

Therefore, it is recommended that defendants' motion to dismiss plaintiff's third claim be denied.

7
(ECF No. 41 at 14-15.)

8
In the pending motion, defendants move to dismiss claim 3 against defendant Ringler on

9
essentially the same grounds raised in the first motion to dismiss.  (ECF No9. 49-1 at 17-18.)

10
The undersigned recommends that the motion to dismiss claim 3 against defendant Ringler be

11
denied for the reasons set forth above.

12
*Claim 5 Against Defendant Ruiz*

13
The undersigned herein summarizes plaintiff's retaliation claim against defendant Ruiz.

14
Plaintiff alleges that on January 17, 2013, Officer Williamson searched plaintiff's living

15
space and personal property and discovered no contraband.  Plaintiff alleges that 30 minutes after

16
Officer Williamson conducted this search, defendant Ruiz searched plaintiff's living quarters

17
again.  Plaintiff alleges that defendant Ruiz found an electrical plug or charger.  Plaintiff alleges

18
that although he was allowed to possess this charger, defendant Ruiz charged plaintiff with

19
possession of dangerous contraband based on his possession of this charger.  Plaintiff alleges that

20
defendant Ruiz conducted the search and issued the disciplinary report in retaliation for the

21
grievance plaintiff filed against defendant Ringler based on the December 5, 2012 search.

22
Plaintiff alleges that defendant Ruiz is a close personal friend of defendant Ringler and that

23
defendant Ruiz does not normally conduct contraband searches in plaintiff's housing unit.

24
In the first motion to dismiss, defendants argued that cell searches were permitted under

25
California law, and that in this instance, defendant Ruiz's search of plaintiff's cell was justified

26
by his discovery of contraband.  (ECF No. 41 at 16-17.)  The undersigned rejected this argument,

27
finding that cell searches may not be undertaken solely for retaliatory purposes.  (Id.)  The

28
undersigned also rejected defendants' argument that plaintiff's claims against defendant Ruiz

1    were barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), on the grounds that this argument was

2    more appropriately raised in a summary judgment motion.  (<u>Id.</u>)

3        In their second motion to dismiss, defendants move to dismiss the conspiracy to retaliate

4    claim against defendant Ruiz on the grounds that plaintiff has not pled sufficient facts that

5    defendant Ruiz entered into an agreement with defendant Ringler to retaliate against plaintiff.

6    Defendants argue that plaintiff's claim that defendants Ringler and Ruiz were close friends is not

7    sufficient to demonstrate that defendants entered into an agreement to retaliate against plaintiff.

8        The undersigned agrees with defendants that plaintiff is raising a conspiracy to retaliate

9    claim against defendant Ruiz.  A civil conspiracy is a combination of two or more persons who,

10   by some concerted action, intend to accomplish some unlawful objective for the purpose of

11   harming another which results in damage.  <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856

12   (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983, and it does not enlarge

13   the nature of the claims asserted by the plaintiff, as there must always be an underlying

14   constitutional violation." <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

15       To survive a motion to dismiss, a plaintiff must plead enough facts to plausibly show an

16   agreement between co-conspirators to retaliate with the common objective to violate

17   constitutional rights.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.  Furthermore, a retaliation claim is not

18   plausible if there are "more likely explanations" for the action.  <u>See Iqbal</u>, 129 S. Ct. at 195.

19   Plaintiff must allege enough facts to plausibly show defendants agreed to retaliate against him.

20   <u>See Iqbal</u>, 129 S.Ct. at 1949.

21       For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the

22   plaintiff's] constitutional rights must be shown." <u>Woodrum v. Woodward Cnty.</u>, 866 F.2d 1121,

23   1126 (9th Cir. 1989).  However, "[d]irect evidence of improper motive or an agreement to violate

24   a plaintiff's constitutional rights will only rarely be available.  Instead, it will almost always be

25   necessary to infer such agreements from circumstantial evidence or the existence of joint action."

26   <u>Mendocino Envtl. Ctr. v. Mendocino Cnty.</u>, 192 F.3d 1283, 1302 (9th Cir. 1999).  Therefore, "an

27   agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as

28   the actions of the defendants."   <u>Id.</u> at 1301.

14

1    The undersigned agrees with defendants that plaintiff's assertion that defendants Ruiz and

2    Ringler were close friends does not sufficiently demonstrate that defendants agreed to violate

3    plaintiff's constitutional rights.  See Bliss v. U.S. , 2014 WL 4415319 at *6 (M.D. Penn.)

4    (granting Rule 20 motion to dismiss conspiracy claim on grounds that allegation that defendants

5    were friends did not adequately demonstrate an agreement between individuals); O'Toole v. City

6    of Antioch, 2015 WL 5138277 at *21 (N.D. Cal. 2015) (granting defendants  summary judgment

7    as to conspiracy claim based solely on allegations that defendants used to work together and were

8    friends for years; court found that these allegations were not sufficient to establish that defendants

9    were involved in any agreement to commit constitutional violations); McGee v. Dunn, 2015 WL

10   9077386 at * 7 (S.D. N.Y. 2015) (court granted summary judgment as to conspiracy claim,

11   finding that, "Other than asserting that defendants Dunn and Karst were friends as stated in the

12   complaint, the plaintiff offers no evidence to show an agreement or 'meeting of the minds'

13   between the two.").

14   The undersigned further finds that an agreement to violate plaintiff's constitutional rights

15   between defendants Ringler and Ruiz cannot be reasonably inferred from plaintiff's suggestion

16   that defendant Ruiz planted the charger.  Plaintiff's claim that defendant Ruiz planted the charger

17   is not adequate circumstantial evidence of an agreement between defendants Ruiz and Ringler.[2]

18   Plaintiff's opposition contains no additional allegations demonstrating a meeting of the

19   minds between defendants Ringler and Ruiz.  Accordingly, the undersigned recommends that the

20   conspiracy to retaliate claim against defendant Ruiz be granted on grounds that plaintiff has not

21   pled sufficient facts to demonstrate a meeting of the minds between defendants Ruiz and Ringler.[3]

---

[2]   The undersigned notes that plaintiff's claims regarding the charger are somewhat inconsistent. While he suggests that the charger was planted, he also claims that he was allowed to possess it.

[3]   Defendants further argue that the documentation shows that defendant Ruiz searched the entire building # 20, in accordance with his duties.  Defendants attach a copy of the Rules Violation Report prepared by defendant Ruiz as exhibit E to their motion to dismiss.  Defendants argue that this report demonstrates that defendant Ruiz had no knowledge of whether plaintiff's cell had been previously searched and that he had no reason to target plaintiff.  This argument is very similar to the one raised in defendants' first motion to dismiss.  However, the undersigned need not reach this argument because plaintiff has not alleged sufficient facts in support of his conspiracy claim.

15

1        *Claim 4 Against Defendant Henry*

2        Plaintiff alleges that defendant Henry issued the "lock up order" for plaintiff to be placed

3   in administrative segregation because he was conspiring with defendant Ringler to retaliate

4   against plaintiff for filing the grievance against defendant Ringler regarding the December 5,

5   2012 search.  Defendants have attached a copy of the lock-up order to the motion to dismiss.

6   (ECF No. 49-1 at 39.)

7        A court ordinarily may not consider evidence outside the complaint on a Rule 12(b)(6)

8   motion to dismiss.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.

9   2001).   However, a court may consider evidence on which the complaint "necessarily relies" if:

10   (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and

11   (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  See Branch v.

12   Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County

13   of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); see also Warren v. Fox Family Worldwide, Inc.,

14   328 F.3d 1136, 1141 n.5 (9th Cir. 2003); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 n.3

15   (2d Cir. 2002).  The court may treat such a document as "part of the complaint, and thus may

16   assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  United

17   States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

18        Because the second amended complaint refers to the lock-up order issued by defendant

19   Henry, the lock-up order is essential to plaintiff's claim, and no party questions the authenticity of

20   the lock-up order attached to the motion to dismiss, the undersigned treats this lock-up order as

21   part of plaintiff's second amended complaint.

22        The lock-up order states that on January 16, 2013, plaintiff was removed from Facility D

23   general population and placed in ad seg.  (ECF No. 19-1 at 39.)  The lock-up order goes on to

24   state that information was received by staff identifying plaintiff as the "author of and placing

25   inappropriate material about Correctional Officer S. Ringler in all Facility D housing unit."  (Id.)

26   "Based on the nature of this article, it could be deemed as solicitation for other inmates to create

27   disorder."  (Id.)  "Also, any interactions by Officer Ringler with you can be deemed as retaliation

28   for your publications."  (Id.)  "Your presence in the general population … is deemed a threat to

16

1   the safety and security of the institution…"  (<u>Id.</u>)

2          According to the lock-up order, plaintiff was placed in ad seg because of the bulletins he

3   allegedly printed and posted containing statements regarding defendant Ringler.

4          In their first motion to dismiss, defendants argued that defendant Henry had a legitimate

5   reason for writing the lock-up order.  (ECF No. 41 at 15.)  The undersigned rejected this

6   argument on the grounds that plaintiff's alleged authoring and posting of the bulletins, on which

7   the lock-up order was based, may have constituted protected activity under the First Amendment.

8   (<u>Id.</u> at 16.)  The undersigned also found that the allegations in the complaint did not provide a

9   basis for concluding that plaintiff posted the bulletins, meaning that the argument that he was

10  legitimately placed in administrative segregation was unavailing at this stage of the case.  (<u>Id.</u>)

11         In the second motion to dismiss, defendants argue that plaintiff has not pled sufficient

12  facts in support of his claim that defendant Henry conspired with defendant Ringler to retaliate

13  against plaintiff.  Defendants move to dismiss the conspiracy to retaliate claim against defendant

14  Henry on the grounds that plaintiff has not plead sufficient facts that defendant Henry entered into

15  an agreement with defendant Ringler to retaliate against plaintiff.   Defendants argue that

16  plaintiff's claim that defendants Ringler and Henry were close friends is not sufficient to

17  demonstrate that defendants entered into an agreement to retaliate against plaintiff.

18         For the same reasons the undersigned above found that plaintiff's conspiracy to retaliate

19  claim against defendant Ruiz was not adequately pled, the undersigned finds that plaintiff's

20  conspiracy to retaliate claim against defendant Henry is not adequately pled.  Plaintiff's claim that

21  defendants Henry and Ringler were close friends does not adequately demonstrate a meeting of

22  the minds.

23         Even assuming that plaintiff did not post the bulletins, this circumstance does not

24  adequately demonstrate an agreement between defendants Ringler and  Henry to violate

25  plaintiff's constitutional rights.  The alleged fact that defendant Ringler falsely accused plaintiff

26  of posting the bulletins does not demonstrate that defendant Henry knew that the accusations

27  were false when he issued the lock-up order.  Plaintiff has pled no facts demonstrating that

28  defendant Henry knew that the charges were allegedly false.  Accordingly, the undersigned

1 | recommends that the conspiracy to retaliate claim against defendant Henry be dismissed.

2 |      *Claim 4 Against Defendants Young, Popovits and Arnold*

3 |      Plaintiff alleges that on January 8, 2013, defendants Young, Popovits and Arnold decided

4 | to retain him in ad seg based on the rules violation report charging him with misusing the

5 | computer as part of the conspiracy with defendant Ringler to retaliate against plaintiff for filing a

6 | grievance against him.  (ECF No. 45 at 12.)  These defendants also requested that plaintiff be

7 | transferred away from CSP-Solano.   (Id.)

8 |      Defendants argue that plaintiff's conspiracy to retaliate claims against defendants Young,

9 | Popovits and Arnold should be dismissed because plaintiff fails to allege any facts showing that

10 | these defendants knew about plaintiff's exercise of his First Amendment rights or that these

11 | defendants acted in response to plaintiff's exercise of his First Amendment rights.  Defendants

12 | argue that plaintiff has alleged no facts demonstrating that any of these defendants had any reason

13 | for believing that the rules violation report, the supporting documentation, or the decision of the

14 | hearing officer, were written in bad faith.

15 |      The undersigned agrees with defendants that plaintiff's second amended complaint

16 | contains no allegations demonstrating that defendants Young, Popovits and Arnold knew that the

17 | disciplinary charges and related documents were allegedly false.  Plaintiff has also pled no facts

18 | demonstrating that these defendants had an agreement to conspire with defendant Ringler to

19 | retaliate against plaintiff for his legal activities.  Accordingly, defendants Young, Popovits and

20 | Arnold should be dismissed.

21 |      *Claim 6:  Retaliation Claims Against Defendant Muldong*

22 |      Plaintiff alleges that defendant Muldong retaliated against him for his legal activities by

23 | issuing the rules violation report charging plaintiff with misuse of the state computer.

24 |      In the findings and recommendations addressing the first motion to dismiss, the

25 | undersigned recommended that the motion to dismiss the retaliation claim against defendant

26 | Muldong be granted:

27 |         Defendants have the better of this argument.  Regardless of whether

28 |         plaintiff did or did not print the Flier, Muldong had some basis for
        believing that plaintiff was responsible, based on plaintiff's

1  
2
3

> admission that he "did initially start on the document at my work site about C/O Ringler, however, I decided to erase it off the computer." (ECF No. 29-1 at 46.)  As such, Muldong had a duty under § 3312(a)(3) to report "misconduct … believed to be a violation of law…"

4
5

> For this reason, plaintiff fails to state a retaliation claim against defendant Muldong and it is recommended that defendants' motion to dismiss be granted.

6  (ECF No. 41 at 18.)

7  As discussed above, Judge England granted plaintiff leave to amend as to this claim.

8  In the second amended complaint, plaintiff now claims that defendant Muldong stated in

9  the rules violation report that the bulletin was printed before plaintiff arrived at his work

10  assignment.  (ECF No. 45 at 11.)  Plaintiff also alleges that in December 2012, defendant

11  Muldong told plaintiff that he would not discipline any inmate for printing personal documents on

12  the computers because they were available to inmates for that purpose.  (Id. at 11.)  Plaintiff also

13  alleges that prior to January 8, 2013, defendant Muldong allowed other inmates to type, edit and

14  print personal documents on the computers without risk of discipline.  (Id.)  Based on these

15  allegations, plaintiff is apparently claiming that defendant Muldong had no basis to believe that

16  plaintiff had committed misconduct when he issued the rules violation report.

17  Defendants have attached a copy of the rules violation report issued by defendant

18  Muldong to the motion to dismiss.  Because the second amended complaint refers to the rules

19  violation report, the rules violation report is essential to plaintiff's claim, and no party questions

20  the authenticity of the rules violation report attached to the motion to dismiss, the undersigned

21  treats this rules violation report as part of plaintiff's second amended complaint.  See Branch v.

22  Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County

23  of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

24  The rules violation report charges plaintiff with misuse of a state computer during work

25  on assignment.  (ECF No. 29-1 at 22.)  The rules violation report states that plaintiff admitted that

26  he was the author of the document but that his original intent was not to print the document.  (Id.)

27  Plaintiff also stated that while he started to work on the document at his work site, he decided to

28  erase it off the computer.  (Id. at 26.)  Plaintiff stated that he did not know who made the

1    document or how it got out.  (<u>Id.</u>)  The Rules Violation Report contains a statement by defendant

2    Muldong that the document discovered on January 8, 2013, i.e., the Bulletin, was printed before

3    plaintiff arrived at work.  (<u>Id.</u> at 32.)  Defendant Muldong also stated that it was possible that the

4    document was printed by a clerk other than plaintiff.  (<u>Id.</u>)

5         Defendants also provided a copy of the bulletin plaintiff is alleged to have authored.

6    Because the second amended complaint refers to this document, it is essential to plaintiff's claim,

7    and no party questions the authenticity of this document, the undersigned treats this document as

8    part of plaintiff's second amended complaint.  <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th

9    Cir. 1994), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th

10   Cir. 2002).

11        The bulletin states that defendant Ringler recently harassed inmates in retaliation for using

12   the appeals process, destroyed property and defaced sacred religious artifacts.  (ECF No. 29-1 at

13   33.)  The bulletin goes on to state that as a result of these actions by defendant Ringler, CDCR

14   Hiring Authority is conducting an investigation to determine whether sanctions should be

15   imposed against defendant Ringler.  (<u>Id.</u>)  The bulletin asks inmates who have observed defendant

16   Ringler engaging in any of the listed activities to provide a statement to CAIR California and S.D.

17   Legal Services.  (<u>Id.</u>)

18        In the second amended complaint, plaintiff added allegations in an attempt to demonstrate

19   that defendant Muldong did not have good reason to believe that plaintiff had committed

20   misconduct.  In the pending motion to dismiss, defendants argue that the allegations in the second

21   amended complaint still demonstrate that defendant Muldong had good reason to believe that

22   plaintiff had committed misconduct.  The undersigned agrees with defendants.   Even if plaintiff

23   did not actually print the bulletin, he does not deny being the author.  Moreover, even if defendant

24   Muldong allowed inmates to use the computers for personal use, it is clear that defendant

25   Muldong did not intend for inmates to use the computers to prepare documents such as the

26   bulletin described above.

27        In addition, plaintiff is alleging that defendant Muldong was motivated to file the

28   allegedly false disciplinary charges because he had conspired with defendant Ringler to retaliate

1    against plaintiff for his legal activities.  However, plaintiff's second amended complaint does not

2    contain any specific allegations demonstrating an agreement between defendants Muldong and

3    Ringler.  Defendant Muldong's admissions that it was possible that another inmate printed the

4    bulletin and that the bulletin was printed before plaintiff arrived at work suggest that defendant

5    Muldong was not "out to get" plaintiff in support of the alleged conspiracy to retaliate.

6        For the reasons discussed above, the undersigned again recommends that the conspiracy to

7    retaliate claims against defendant Muldong be dismissed.

8        B.  Claim 8

9        Plaintiff alleges that defendant Swarthout's failure or refusal to properly supervise or train

10   the other named defendants fostered or created a policy of overt retaliation.

11       Defendants move to dismiss this claim on the grounds that plaintiff has failed to establish

12   that defendant Swarthout knew of any unlawful conduct by any other defendants before or at the

13   time the alleged unlawful conduct occurred.   Defendants quote Henry v. Sanchez, 923 F.Supp.

14   1266, 1272 (C.D. Cal. 1996), for the proposition that "[a] supervisory official, such as a warden,

15   maybe liable under Section 1983 only if he was personally involved in the constitutional

16   deprivations, or if there was a sufficient causal connection between the supervisor's wrongful

17   conduct and the constitutional violation."  Citing Barry v. Ratelle, 985 F.Supp. 1235, 1239 (S.D.

18   Cal. 1997), defendants argue that for there to be a sufficient causal connection, the official must

19   have actually known of a constitutional violation.

20       Defendants' argument that plaintiff must demonstrate that defendant Swarthout knew that

21   defendants were violating plaintiff's constitutional rights in order to state a "failure to train" claim

22   is not accurate.  However, for the reasons discussed below, the undersigned finds that plaintiff has

23   not stated a potentially colorable "failure to train" claim against defendant Swarthout.

24       To state a claim for failure to train, a prisoner must allege facts to support a finding that

25   the failure to train amounted to deliberate indifference.  See Canell v. Lightner, 143 F.3d 1210,

26   1213 (9th Cir. 1998).  In other words, plaintiff must allege that, not only was the training

27   inadequate, but that the inadequacy was the result of a deliberate or conscious choice by

28   defendant Swarthout.  Id. at 1213 (citing City of Canton,. Ohio v. Harris, 489 U.S. 378, 389

(1989).

Other than his conclusory assertion, plaintiff has pled no facts demonstrating that defendant Swarthout failed to train any defendant.  Moreover, plaintiff has pled no facts demonstrating that any alleged failure to train by defendant Swarthout was the result of a deliberate or conscious choice.  On these grounds, the undersigned recommends that the failure to train claim against defendant Swarthout be dismissed.  See 28 U.S.C. § 1915(e)(2) (court may dismiss case at any time it determines that it fails to state a claim on which relief may be granted).

C.  Claim 9

In claim 9, plaintiff alleges that all defendants conspired to retaliate against him for his legal activities and to violate his right to religious freedom pursuant to California Civil Code § 52.1, i.e., The Bane Act.

The Bane Act proscribes conduct by any person, "whether or not acting under color of law," who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state. . . ."  Cal. Civ. Code § 52.1(a).  An action may be brought by the government, id., or by an individual, id. § 52.1(b), in a "civil action for damages, including, but not limited to, damages under Section 52,[4] injunctive relief, and other appropriate equitable

---

[4] Damages recoverable under Cal. Civil Code 52(b) are as follows:

. . . (b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice.

(3) Attorney's fees as may be determined by the court.

1    relief to protect the peaceable exercise or enjoyment of the right or rights secured," id.

2           "To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant

3    acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the

4    plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." O'Toole v.

5    Superior Court, 140 Cal. App. 4th 488, 502 (2006), citing Venegas v. Cnty. of Los Angeles, 32

6    Cal. 4th 820, 841-43 (2004).  Section 52.1 "require[s] an attempted or completed act of

7    interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17

8    Cal. 4th 329, 334 (1998) (quoted with approval in City and Cnty. of San Francisco v. Ballard, 136

9    Cal. App. 4th 381, 409 (2006)).  "The essence of a Bane Act claim is that the defendant, by the

10   specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the

11   plaintiff from doing something he or she had the right to do under the law or to force the plaintiff

12   to do something that he or she was not required to do under the law." Shoyoye v. Cnty. of Los

13   Angeles, 203 Cal. App. 4th 947, 956 (2012) (citations and internal quotation marks omitted).

14   "Technically, whether a constitutional violation occurred and whether that violation was

15   accompanied by any threats, intimidation or coercion are separate analytical inquiries (albeit with

16   intertwining facts)." Barsamian v. City of Kingsburg, 597 F. Supp. 2d 1054, 1057 (E.D. Cal.

17   2009).

18          "It may be true that this section and other similar California statutes were enacted in

19   response to the alarming increase in hate crimes.  Nevertheless, there is no requirement that the

20   violence be extreme or motivated by hate in the plain language of the sections, or in the cases

21   construing them; there is also no requirement that the act constitute a crime.  If the California

22   legislature wanted to limit the reach of the statute to extreme, criminal acts of violence, it could

23   have explicitly said so." Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1289

24   (9th Cir. 2001) (citations and internal punctuation marks omitted).

25          The elements of a claim under section 52.1 are:

26                 (1) that the defendant interfered with or attempted to interfere with
                   the plaintiff's constitutional or statutory right by threatening or
27                 committing violent acts; (2) that the plaintiff reasonably believed
                   that if she exercised her constitutional right, the defendant would
28                 commit violence against her or her property [or] that the defendant

                                              23

1
2
3

injured the plaintiff or her property to prevent her from exercising her right or retaliate[d] against the plaintiff for having exercised her right; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm.

4   McCue v. South Fork Union Elementary School, 766 F. Supp. 2d 1003, 1010 (E.D. Cal. 2011)

5   (citing Austin B. v. Escondido Union School Dist., 149 Cal.App.4th 860, 882 (2007), and CACI

6   No. 3025).

7         In the first motion to dismiss, defendants argued that plaintiff had failed to state a Bane

8   Act claim because "[n]one of the [alleged] acts are violent acts, none of them involve physical

9   contact, and some of these acts consist only of decision-making." (ECF No. 41 at 21.) The

10  undersigned found that defendants' contention was largely correct, with the exception of

11  defendants Ringler and Zuniga:

12
13
14
15
16
17
18
19
20

Plaintiff alleges that after these defendants concluded their December 5, 2012 cell search, "two of plaintiff's Holy Korans were destroyed and or desecrated. One Koran was torn lengthwise or crosswise while the other was discovered face down in some unknown liquid." (FAC ¶ 11, ECF No. 18.) At the conclusion of the search, plaintiff alleges that Ringler sarcastically asked him, "How did your case turn out?" (Id. ¶ 12.) Nine days later, plaintiff alleges that defendant Ringler "spontaneously stated to [him,] 'I know all about you, I'm not finished with you yet.'" (Id. ¶ 18.) These allegations are sufficient to satisfy the first two elements of a Bane Act claim. The alleged desecration and/or destruction of plaintiff's Korans was both an allegedly violent act and an injury to his property. Ringler's question regarding the prior case indicates an intent to interfere with or retaliate for plaintiff's exercise of his Constitutional right of access to the courts. Ringler's subsequent spontaneous statement to plaintiff, coming shortly after the challenged cell search in which the Korans were damaged, could be construed as a threat to commit such acts in the future.

21
22
23
24
25
26

Plaintiff has also alleged that he suffered harm (the third element of a Bane Act claim), in that his Korans were damaged during the search. Finally, he has alleged harm (the fourth and final element) as a result of the December 5, 2012 search and Ringler's statements, pleading, "As a proximate or direct result of the desecration of plaintiff's Holy Koran and threats of further retaliation, plaintiff experienced what he believed to be stress due to symptoms such as depression, lack of energy, appetite and loss of weight," for which he sought medical attention. (Id. ¶¶ 26, 27.)

27
28

Based on the foregoing, it appears that the first amended complaint states a claim against defendants Ringler and Zuniga under California Civil Code § 52.1. Nevertheless, this claim should be dismissed against the remaining defendants. [Footnote 5]

24

1
2
3
4

[Footnote 5:  As Judge O'Neill observed, "[N]o case has actually applied supervisor liability to a Bane Act claim and this federal court is loath to expand the reach of Bane Act liability."  <u>Sanchez v. Cit of Fresno</u>, 914 F.Supp.2d 1079, 1118 n.19 (E.D. Cal. 2012).  It therefore appears that defendant Scotland cannot be properly named as a defendant under the Bane Act despite plaintiff's allegation that Scotland supervised Ringler's cell searches.]

5  (<u>Id.</u> at 21-22.)

6         In the second amended complaint, plaintiff now alleges that all defendants *conspired* to

7  violate the Bane Act.  (ECF No. 45 at 18.)

8         Under California law, civil conspiracy requires a plaintiff to plead that "the conspiring

9  parties reached a unity of purpose or a common design and understanding, or a meeting of the

10  minds in an unlawful arrangement."  <u>See</u> <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856

11  (1999) (citing <u>Vieux v. East Bay Reg'l Park Dist.</u>, 906 F.2d 1330, 1343 (9th Cir. 1990)).  Each

12  conspirator "need not know the exact details of the plan, but each participant must at least share

13  the common objective of the conspiracy."  <u>Id.</u> at 856.

14         Plaintiff's potentially colorable Bain Act claim is that defendants Ringler and Zuniga

15  damaged his Korans on December 5, 2012.  Thus, to succeed on his Bane Act conspiracy claim,

16  plaintiff must allege that defendants conspired to help defendants Ringler and Zuniga damage the

17  Korans on December 5, 2012.

18         Defendants argue that plaintiff has not alleged sufficient facts to demonstrate that

19  defendants Henry, Ruiz, Muldong, Young, Popovits and Arnold conspired with defendants

20  Ringler and Zuniga to violate his rights under the Bane Act.  The undersigned agrees.  Plaintiff

21  has not pled sufficient facts demonstrating that defendants Henry, Ruiz, Muldong, Young,

22  Popovits and Arnold were in any way connected to the December 5, 2012 damage to the Korans.

23  Plaintiff's claims against these defendants involve incidents occurring after December 5, 2012.

24  Accordingly, plaintiff's claim against these defendants for conspiring to violate the Bane Act

25  should be dismissed.

26         With respect to defendant Swarthout, the second amended complaint includes no

27  allegations demonstrating that Swarthout entered an agreement to violate plaintiff's constitutional

28  rights.  Accordingly, plaintiff's claim against defendant Swarthout for conspiring to violate the

1   Bane Act should be dismissed.

2          With respect to defendant Scotland, plaintiff alleges that in October 2012, defendants

3   Ringler and Scotland became aware of plaintiff's litigation against CDCR after plaintiff used the

4   telephone in defendant Scotland's office to participate in a telephonic settlement conference.

5   Plaintiff alleges that as a result of having knowledge of plaintiff's litigation, defendants Scotland

6   and Ringler began retaliating against him.  Plaintiff alleges that the first act of retaliation occurred

7   on December 5, 2012, when defendants Ringler and Zuniga searched his cell.  Plaintiff alleges

8   that defendant Ringler conducted the search under the supervision of defendant Scotland.  Based

9   on these allegations, it may be reasonably inferred that defendant Scotland conspired with

10  defendants Ringler and Zuniga to engage in the search that resulted in the damage to plaintiff's

11  Korans.  Accordingly, defendants' motion to dismiss the Bane Act claim against defendant

12  Scotland should be denied.

13  Conclusion

14         The undersigned recommends that defendants' motion to dismiss be denied as to claims 1

15  and 2 against defendant Zuniga, claim 3 against defendant Ringler and claim 9 as to defendant

16  Scotland.  The undersigned recommends that defendants' motion to dismiss be granted in all

17  other respects.

18         If these findings and recommendations are adopted, this action will proceed on the

19  following claims:  claim 1 against defendants Ringler, Zuniga and Scotland; claim 2 against

20  defendants Zuniga and Ringler; claim 3 against defendant Ringler; claim 7 against defendant

21  Ringler; and claim 9 against defendants Ringler, Zuniga and Scotland.

22         Based on the extensive briefing by the parties with respect to both motions to dismiss, as

23  well as the undersigned's careful consideration of plaintiff's claims, the undersigned finds that it

24  is not likely that plaintiff can cure the pleading defects discussed in these findings and

25  recommendations.  For that reason, the undersigned does not grant plaintiff leave to amend.

26         Accordingly, IT IS HERBY RECOMMENDED that defendants' motion to dismiss (ECF

27  No. 49) be denied as to claims 1 and 2 against defendant Zuniga, claim 3 against defendant

28  Ringler and claim 9 as to defendant Scotland;  defendants' motion to dismiss should be granted in

1    all other respects.

2           These findings and recommendations are submitted to the United States District Judge

3    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4    after being served with these findings and recommendations, any party may file written

5    objections with the court and serve a copy on all parties.  Such a document should be captioned

6    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

7    objections shall be filed and served within fourteen days after service of the objections.  The

8    parties are advised that failure to file objections within the specified time may waive the right to

9    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   Dated:  February 1, 2016

11

12                                                    KENDALL J. NEWMAN
                                                      UNITED STATES MAGISTRATE JUDGE
     Mcmill578.57
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                27